HOWARD B. FRANK
ATTORNEY AT LAW
136 Redwood Street
San Diego, CA  92103
(619) 574-1888
California State Bar No. 42233

Attorney for Defendant
Benny Lopez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA
(Hon. Janis L. Sammartino)

| UNITED STATES OF AMERICA, | ) | Case No. 08-CR-0212-JLS |
|---|---|---|
| | ) | |
| Plaintiff, | ) | NOTICE OF MOTION AND |
| | ) | MOTION TO SUPPRESS |
| v. | ) | ILLEGALLY OBTAINED |
| | ) | EVIDENCE |
| BENNY LOPEZ, | ) | |
| | ) | Date: March 7, 2008 |
| Defendant. | ) | Time: 1:30 p.m. |
| | ) | |

TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY and PAUL STARITA, ASSISTANT UNITED STATES ATTORNEY, SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO, CA:

PLEASE TAKE NOTICE that on March 7, 2008 at 1:30 p.m., or as soon thereafter as counsel may be heard, defendant Benny Lopez, through his attorney, Howard Frank, will move this Honorable Court to suppress illegally obtained evidence in the above-entitled matter.

U.S. v. Lopez
Case No. 08-CR-0212-JLS            1

## MOTION

Defendant, Benny Lopez, through his attorney, Howard B. Frank, respectfully moves this Honorable Court to suppress illegally obtained evidence in the above-entitled matter.

This motion is based upon the Fourth Amendment to the United States Constitution, the attached Statement of Facts and Memorandum of Points and Authorities, the files and records in this matter, and upon such other matters as may come before the court at the time of the hearing of this motion.

Dated: February 22, 2008                           Respectfully submitted


                                                   s/ Howard B. Frank
                                                   Howard B. Frank
                                                   Attorney for Defendant
                                                   Benny Lopez

HOWARD B. FRANK
ATTORNEY AT LAW
136 Redwood Street
San Diego, CA  92103
(619) 574-1888
California State Bar No. 42233

Attorney for Defendant
Benny Lopez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA
(Hon. Janis L. Sammartino)

| UNITED STATES OF AMERICA, | ) | Case No. 08-CR-0212-JLS |
|---|---|---|
| | ) | |
| Plaintiff, | ) | STATEMENT OF FACTS AND |
| | ) | MEMORANDUM OF POINTS AND |
| v. | ) | AUTHORITIES IN SUPPORT OF |
| | ) | MOTION TO SUPPRESS ILLEGALLY |
| BENNY LOPEZ, | ) | OBTAINED EVIDENCE |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.

STATEMENT OF FACTS AND PROCEEDINGS

Defendant Benny Lopez is named in five counts of a seven count indictment with bringing in and transporting illegal aliens, in violation of 8 U.S. C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii).

On January 13, 2008, Border Patrol Agent Prishker saw Mr. Lopez driving a blue Chevrolet Avalanche slowly, eastbound, just west of mile marker 33.5 on Old Highway

80, an area close to the international border between the United States and Mexico and a known loading area for illegal aliens and narcotics smugglers.

Agent Western had seen the same vehicle parked nearby at the Lux Inn Motel. A similar vehicle was observed "in the vicinity of several narcotics smuggling evolutions in the past two weeks near Boulevard, California."

Agent Hunt saw the vehicle traveling very slowly in front of him. As he neared, the vehicle accelerated then parked in front of the Jacumba Hot Springs Spa and Resort. Mr. Lopez and his passenger, Ms. Rosales-Ortega, exited the vehicle and entered the resort.

Approximately one hour later, Mr. Lopez and Ms. Rosales-Ortega exited the resort and began driving back in the direction they had come toward the Lux Inn Motel. At approximately 11:30 a.m., Agent Trautmann conducted a vehicle stop on Ribbonwood Road, approximately one-half mile from the Lux Inn Motel.

II.

POINTS AND AUTHORITIES

Under the Fourth Amendment, warrantless searches are per se unreasonable. *Katz v. United States*, 389 U.S. 347, 357, (1967); *United States v. Ventresca*, 380 U.S. 102, 106 (1965). While such searches are not absolutely prohibited, the exceptions to the warrant requirement are narrowly drawn and jealously guarded. *Jones v. United States*, 357 U.S. 493, 499 (1958); *United States v. Jeffers*, 342 U.S. 48, 51 (1951).

As such, the government bears the burden to prove that a warrantless search is reasonable. 4 W. LaFave, Search and Seizure 218 (2d ed. 1987); *United States v. Kaplan*, 895 F.2d 618, 622 (9th Cir. 1990); *United States v. Al-Azzawy*, 784 F.2d 890, 895 (9th Cir. 1985), cert. denied, 476 U.S. 1144 (1986).

An officer violates the Fourth Amendment if he detains a motorist without reasonable suspicion. *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003); *Ornelas v. United States*, 517 U.S. 690, 693 (1996). "Reasonable suspicion" requires "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000); *United States v. Cortez*, 449 U.S. 411, 417 (1981).

In evaluating whether "reasonable suspicion existed to justify an investigatory stop, the court must consider the facts available to the officer *at the moment of seizure*. *United States v. Smith*, 217 F.3d 746, 749 (9th Cir. 2000) [emphasis added], citing, *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

In determining whether reasonable suspicion exists to justify a stop, the court looks at the totality of the circumstances. *United States v. Fernandez-Castillo, supra*, 324 F.3d at 1117, citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Reasonable suspicion cannot be based on 'broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person being stopped.' *United States v. Rodriguez-Sanchez*, 23 F.3d 1488, 1492 (9th Cir.1994). It must be based

on facts and not the 'mere subjective impressions of a particular officer.' *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir.1989)." *United States v. Jimenez-Medina*, 173 F.3d 752, 754 (9th Cir. 1999).

An agent's experience in detecting alien smuggling operations may be considered (*United States v. Franco-Munoz*, 952 F.2d 1055, 1058 (9th Cir.1991)), but a "mere hunch is insufficient to justify a stop." *United States v. Arvizu, supra*, 534 U.S. at 274. "While facts are to be interpreted in light of an officer's experience, 'experience may not be used to give officers unbridled discretion in making a stop.'" *United States v. Jimenez-Medina, supra*, 173 F.3d at 754, quoting, *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir.1989), citing *Nicacio v. United States I.N.S.*, 797 F.2d 700, 705 (9th Cir.1985).

"In the context of stops made near a border, the Supreme Court has identified a non-exclusive set of factors that may be considered in determining whether reasonable suspicion exists: (1) characteristics of the area where the vehicle is encountered; (2) proximity to the border; (3) usual traffic patterns on the particular road; (3) previous experience with alien traffic; (4) recent illegal border crossings in the area; (5) erratic or evasive driving behavior; (6) aspects of the vehicle; and (7) the behavior or appearance of the driver." *United.States v. Diaz Juarez*, 299 F.3d 1138, 1141 (2002), citing, *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975).

In *United States v. Jimenez-Medina, supra*, the Ninth Circuit held that the

following six factors were insufficient to establish reasonable suspicion: the type of vehicle; the slow speed of the vehicle; the driver's concern upon seeing law enforcement; the vehicle's registration; the area's reputation as a corridor for alien smuggling; and the time of evening. *Id.*, 173 F.3d at 755.

In *United States v. Hernandez-Alvarado,* the court held the following factors insufficient to establish reasonable suspicion: the nervousness of the defendant and his passengers; reducing the vehicle's speed from 65 to 55 m.p.h.; the presence of a two-way antenna on the trunk of the vehicle; the defendant's residence in a neighborhood along the U.S.-Mexican border which was under investigation for narcotics activity; the license plate bracket indicating that the car had been purchased from a dealership associated with drug trafficking, and the size of the vehicle's trunk. *Id*. 891 F.2d at 1418. In so doing, the court stated:

> "Considered jointly, these factors are insufficient to justify an investigatory stop. While they may allow certain inferences to be drawn, they describe too many individuals to create a reasonable suspicion that this particular defendant is engaged in criminal activity. For example, while the car dealership in question has been associated with drug activity, many citizens with no connection to drug trafficking also have purchased family vehicles there. Likewise, many law-abiding motorists have two-way antennas installed on their cars, live near the Mexican border, and reduce their speed on the freeway when being followed by a law enforcement vehicle. Thus, these facts in combination do not constitute reasonable suspicion." *Id.* at 1418-1419.

In *United States v. Rodriguez*, 976 F.2d 592, 594 (9th Cir.1992), the court found the following factors insufficient to support a finding of reasonable suspicion: interstate 8

is a "notorious route for alien smugglers"; the defendant did not acknowledge the agents as he passed their marked car; the defendant's car was of a kind agents thought could be used for alien smuggling; the vehicle appeared to be "heavily loaded" and "kind of floated" over bumps in the road; the defendant is a Hispanic male; while being followed, the defendant looked at the agents several times in his rear-view mirror and swerved slightly within his lane. The court found these factors insufficient because, inter alia, the profile tendered by the agents was "calculated to draw into the law enforcement net a generality of persons unmarked by any really articulable basis for reasonable suspicion." *Id.* at 596.

In *United States v. Garcia-Camacho*, 53 F.3d 244 (9th Cir. 1995), the court found the following factors insufficient and too similar to those previously rejected in *Rodriguez*

> "(1) interstate 5 is the "quickest route to economic opportunities" for illegal aliens; (2) defendants looked straight ahead and did not acknowledge Agent Madrid or his partner; (3) Garcia-Camacho's truck was of a kind that Agent Madrid thought could be used for alien smuggling; (4) the truck appeared heavily laden based on the way it reacted to bumps; (5) defendants are Hispanic males; (6) Garcia-Camacho was driving the truck faster than the flow of traffic, the truck appeared to accelerate as it passed agent Madrid's position, and the truck made a lane change near Madrid's position; (7) shortly after the truck passed the location of Agent Madrid, the passenger turned toward Madrid with a "surprised" and "terrified" look on his face; (8) the truck proceeded for "some distance"-around one to one-and-a-half miles-before pulling over." *United States v. Garcia-Camacho*, 53 F.3d at 246.

The court stated that the first five factors "are virtually identical to the factors that were insufficient in *Rodriguez*." Moreover, factor (2) was discredited by

*Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1446 (9th Cir.1994).  A driver's failure to look at the Border Patrol is not a proper factor to consider in determining whether reasonable suspicion exists because "the opposite reaction, a driver's repeated glancing at a Border Patrol car, can also be used to justify the agent's suspicion.  To give weight to this type of justification 'would put the officers in a classic '"heads I win, tails you lose"' position [and] the driver, of course, can only lose."] (citations omitted). *United States v. Garcia-Camacho*, 53 F.3d at 247

      The court likewise discounted the acceleration of the vehicle as adding little or nothing to the analysis because the government had previously argued that deceleration "constituted suspicious conduct." *United States v. Garcia-Camacho*, 53 F.3d at 247, citing, *United States v. Hernandez-Alvarado, supra*, 891 F.2d at 1418.

      The court added, "Presumably, the only nonsuspicious conduct would be if the driver kept constant speed while passing a Border Patrol car" yet added "It is not difficult to imagine the government one day arguing that driving at constant speed constitutes suspicious conduct because the best way to evade Border Patrol agents is not to stand out by going faster or slower than the normal flow of traffic; rather, it is to blend into the traffic." *United States v. Garcia-Camacho*, 53 F.3d at 247, fns. 4 and 5.

      The court also rejected the nervous reaction of the defendant upon seeing the Border Patrol citing *Hernandez-Alvarado* where the court placed little weight upon "the nervous demeanor of both the defendant and his passengers as they sat in the truck"

because they involved "the mere subjective impressions of [the] particular officer." *Id.* at 247-248, citing, *United States v. Hernandez-Alvarado, supra,* 891 F.2d at 1416, 1418-19.

Finally, the court rejected the government's reliance on *United States v. Franco-Munoz*, 952 F.2d 1055 (9th Cir.1991) as mandating a finding of reasonable suspicion. There, the following factors constituted reasonable suspicion: the defendant appeared Hispanic; the area where the car was stopped was "notorious for alien smuggling"; the defendant did not initially acknowledge the agents' presence, but upon being followed, looked at the patrol car in his rear and side view mirrors several times; the defendant's car was a rental; defendant was stopped near a shift change; the car appeared heavily laden from the way it responded to bumps on the road. *United States v. Garcia-Camacho*, 53 F.3d at 246, citing, *United States v. Franco-Munoz, supra,* 952 at 1057.

The court found the only factor remotely applicable to this case was the last factor; however, it distinguished Garcia-Camacho's case because the vehicle in *Franco-Munoz* was a car, which appeared heavily laden even though it had only one passenger in it while Garcia-Camacho was driving "a truck with two passengers and a camper top, all of which contribute to the heavily laden nature of the vehicle. Moreover, unlike a passenger car, one of the normal uses of a truck is to transport heavy materials. Thus, the heavily laden aspect of the truck is less suspicious here." *United States v. Garcia-Camacho*, 53 F.3d at 249; see also, *United States v. Sigmond-Ballesteros*, 285 F.3d 1117, 1125 (9th Cir. 2002)

["light trucks and pick ups, although sometimes used by smugglers, as are many other types of vehicles, in recent years have been popular best-sellers, and are commonly used by those who are engaged in agricultural work, the construction trades, or any other trade which requires the carrying of heavy tools or implements."].

Although recognizing the difficult task faced by Border Patrol agents on a daily basis, the Ninth Circuit concluded the government had not established reasonable suspicion to stop the defendant's vehicle. The factors cited "'could certainly fit hundreds or thousands of law abiding daily users of the highways of Southern California,'" and the court refused to "'approve the wholesale seizure of miscellaneous persons, citizens or non-citizens' in the absence of 'well-founded suspicion based on particular, individualized, and objectively observable factors which indicate that the person is engaged in criminal activity.'" *United States v. Garcia Camacho, supra,* 53 F.3d at 249, quoting, *United States v. Rodriguez, supra*, 976 F.2d at 596; see also, *United States v. Hernandez-Alvarado, supra,* 891 F.2d at 1418-19; *Gonzalez-Rivera v. INS, supra,* 22 F.3d at 1447.

In light of the foregoing, the factors relied on to stop defendant's vehicle were likewise insufficient to establish reasonable suspicion. Agents relied on the fact the vehicle was "driving slowly" in "a known loading area for illegal aliens and narcotics smugglers" and "a vehicle of the same make, model and color had been observed in the vicinity of several narcotics smuggling evolutions in the past two weeks near Boulevard,

California."

As the Supreme Court noted in *Reid v. Georgia*, 448 U.S. 438, 441, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (1980), conduct that "describes a very large category of presumably innocent travelers" is insufficient to constitute a reasonable suspicion.

Moreover, while proximity to the border is a relevant factor in determining whether there is reasonable suspicion to stop a vehicle in the border area, it cannot be the controlling factor. See *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975).

As the Fifth Circuit noted in *United States v. Newell*, 506 F.2d 401 (5th Cir. 1975), "roads near the border carry not only aliens seeking to enter the country illegally, but a large volume of legitimate traffic as well ... mere proximity to the border does not automatically place the citizenry within a deconstitutionalized zone." *Id.* at 405.

In this case, agents had no more than a hunch the Chevrolet Avalanche was involved in a crime based on a similar vehicle having been in the area previously, and, on the day in question, the vehicle having stopped at one legitimate place of business, a hotel, driven to another legitimate place of business, a spa and resort, and after one hour, by all indications, headed back to the first.

None of the factors cited were sufficient to provide justification to stop the defendant's vehicle. Therefore, there was no legitimate basis to conduct the stop and detain defendant. All evidence seized as a result of the improper detention was done so

illegally and must be suppressed. *United States v. Colin* 314 F.3d 439, 446 (9th Cir. 2002), citing, *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir.2000) (finding that search and resulting seizure were products of illegal stop and that evidence therefore should have been suppressed); *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir.2000) (suppressing evidence that police officer gathered pursuant to an unconstitutional stop); *United States v. Millan*, 36 F.3d 886, 890 (9th Cir.1994) ("Because the interrogation and search were a direct result of the illegal stop, we hold that all of the evidence must be suppressed.").

## CONCLUSION

For all the foregoing reasons, defendant respectfully submits the agent had an insufficient basis to legally justify the stop of the vehicle. Therefore, all evidence obtained by the government as a result of the stop should be suppressed.

Dated: February 22, 2008                                    Respectfully submitted

                                                             s/ Howard B. Frank
                                                             Howard B. Frank
                                                             Attorney for Defendant
                                                             Benny Lopez